IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT FINE WINE & SPIRITS, LLC, d/b/a TOTAL WINE & MORE<br>6600 Rockledge Drive<br>Bethesda, Maryland 21007,<br><br>            Plaintiff,<br><br>v.<br><br>JONATHAN A. HARRIS, Commissioner<br>Department of Consumer Protection<br>165 Capitol Ave.<br>Hartford, CT 06106<br><br>JOHN SUCHY, Director<br>Division of Liquor Control<br>165 Capitol Ave.<br>Hartford, CT 06106<br><br>            Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff Connecticut Fine Wine & Spirits, LLC d/b/a Total Wine & More (hereinafter "Total Wine & More" or "Plaintiff"), hereby sues defendants Jonathan A. Harris, in his official capacity as Commissioner of the Connecticut Department of Consumer Protection, and John Suchy, in his official capacity as Director of the Connecticut Division of Liquor Control, for injunctive and declaratory relief and states:

1. Plaintiff is a Connecticut limited liability company with a principal place of business located in Bethesda, Maryland. Total Wine & More currently owns and operates four retail beverage stores in Connecticut, all doing business as Total Wine & More.

2. Defendant Jonathan A. Harris is the Commissioner of the Connecticut Department of Consumer Protection. Mr. Harris has a duty to enforce the provisions of

5623070.2

Connecticut's Alcoholic Beverage Code. Plaintiff has sued Mr. Harris in his official capacity only, in order to challenge the unlawful pricing provisions cited herein.

3. Defendant John Suchy is the Director of the Division of Liquor Control. Mr. Suchy has a duty to enforce the provisions of Connecticut's Alcoholic Beverage Code, including the pricing provisions cited herein. Plaintiff has sued Mr. Suchy in his official capacity only, in order to challenge the unlawful pricing provisions cited herein.

## JURISDICTION AND VENUE

4. This action arises under 15 U.S.C. §§ 1, 15, and 26 and 28 U.S.C. §§ 2201 and 2202.

5. This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 4 and 26 and 28 U.S.C. §§ 1331, 2201, and 2202.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants are residents of this State and district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## ALLEGATIONS OF FACT

7. Total Wine & More is affiliated with other entities that together own and operate retail licensees of alcoholic beverages in approximately 21 states, all trading under the same name. The Total Wine & More affiliated companies, headquartered in Bethesda, Maryland, are the country's largest independent retailers of fine wine and spirits. Stores that operate under the Total Wine & More name are committed to offering the nation's best selection of alcoholic beverages, and to having the lowest prices on wine, spirits, and beer.

8. Plaintiff opened its first Connecticut store, in Norwalk, in December 2012. Since then Plaintiff has opened stores in Milford, Manchester, and West Hartford.

9. Total Wine & More holds Connecticut package store permits for its four operating locations for the benefit of each of its Connecticut stores and the Total Wine & More brand.

10. Since opening its first store in Delaware in 1991, the Total Wine & More brand has received a number of awards and recognition for its vast selection of products, combined with low everyday prices and expertly trained wine associates, including the beverage industry's national retailer of the year award in 2004, 2006, 2008, and 2014. Total Wine & More has endeavored, through the operation of its retail stores in Connecticut, to implement the Total Wine & More philosophy of offering the best prices, while also offering superior service with the best selection in clean, spacious, well-organized and customer friendly stores.

11. Total Wine & More has been prevented from offering the best prices by an anticompetitive regime of statutes and regulations that intentionally promotes horizontal and vertical price-fixing by Connecticut wholesalers of alcoholic beverages.

12. Under Connecticut law, state-licensed manufacturers (vintners, distillers and national and international distribution firms) and state-licensed wholesalers of wine and spirits must post with the Department of Consumer Affairs, on a monthly basis, a "bottle price" and a "case price" for goods sold to retailers in Connecticut. The posted prices control the prices offered for the following month. All posted prices are distributed to industry participants, including manufacturers and wholesalers, and those participants may amend their own posted prices to meet a competitor's lower price. *See* Conn. Gen. Stat. § 30-63; Conn. Adm. Code § 30-6-B12.

13. Under Connecticut law, retailers like Total Wine & More are prohibited from selling their inventory at prices below the retailers' statutorily defined "cost," Conn. Gen. Stat. §

30-68m(b), which generally means, for wine and spirits, the posted "bottle price" from the wholesaler plus a markup for shipping and delivery. *See* Conn. Gen. Stat. §§ 30-68m(a)(1).

14. Under Connecticut law, wholesalers of alcoholic beverages are barred from offering volume discounts to retailers. *See* Conn. Gen. Stat. §§ 30-68k, 30-63(b); *see also id.* § 30-94(b); Conn. Adm. Code § 30-6-A29(a). The volume-discount ban facilitates and reinforces the mandatory price-posting laws, which themselves facilitate and impel vertical and horizontal price-fixing among manufacturers and wholesalers. (The statutes and regulations cited in paragraphs 12 through 14 are referred to as the "challenged provisions.")

15. Under Connecticut law, the retail sale of alcoholic beverages is prohibited except as permitted by the Liquor Control Act, including the challenged provisions. Conn. Gen. Stat. § 30-74. Any person or permittee who sells in violation of the Liquor Control Act may be liable for fines up to $1000 or imprisonment up to one year or both, unless the Act establishes a separate specific penalty. *Id.* § 30-113. In addition, the Department of Consumer Affairs has authority to suspend and revoke a retailer's permit for violations of the provisions of the Liquor Control Act. *Id.* § 30-55.

16. Connecticut manufacturers and wholesalers have used the challenged provisions of Connecticut law to fix and maintain prices at levels substantially above what fair and ordinary market forces would dictate. For example, wholesalers set bottle and case prices and share that information with each other through the state-mandated posting system, and then consistently coordinate their prices to match their competitors' posted prices, resulting in horizontal price-fixing at the wholesale level.

17. Wholesalers also engage in vertical price-fixing by setting high "minimum bottle prices," derived from case prices during "on-post" months. Wholesalers typically lower their

monthly case prices periodically throughout the year during regular "off-post" months, but without lowering the corresponding minimum bottle price or without lowering the bottle price in proportion to the lowered case price. Through this practice, wholesalers effectively control both retail price and retailers' profit margins. Wholesalers know that retailers buy almost exclusively by the case and that they will buy larger quantities during off-post months, but retailers then must sell off-post product at a margin the wholesaler has fixed through the artificially higher minimum bottle price. Under this anticompetitive regime, a retailer like Total Wine & More cannot use its market and business efficiencies to reduce the prices offered to consumers.

18.   A recent study of the minimum bottle pricing regime in Connecticut, prepared on behalf of the Distilled Spirits Council of the United States ("DISCUS"), concluded that this regime, which is unique to Connecticut among all 50 states, resulted in retail prices for wine and spirits in Connecticut that are as much as 24% higher than prices offered for identical products in the surrounding states.

19.   The challenged provisions facilitate and impel wholesalers to combine, conspire, and agree, either tacitly or expressly, to fix and maintain wholesale and retail prices in accordance with these practices. Total Wine & More sees evidence of price-fixing and resale price maintenance by wholesalers on a monthly basis. Competing wholesalers for the same brands routinely set the same bottle and case prices down to the penny, month after month, with each wholesaler exactly tracking its competitors' on-post and off-post case prices. Recent examples of these pricing patterns are presented in the attached Tables 1 and 2. The price-fixing by wholesalers, facilitated and impelled by the challenged provisions, constitutes a horizontal restraint of trade and a per se violation of the federal Sherman Act.

20. On information and belief, the challenged restrictions facilitate and impel wholesalers to combine, conspire, and agree with manufacturers and with Connecticut retailers to fix and maintain wholesale and retail prices for alcoholic beverages. On information and belief, wholesalers use the challenged provisions to enforce their agreements with manufacturers, other competing wholesalers, and with Connecticut retailers, to fix and maintain prices at the wholesale and retail level.

21. No agency or instrumentality of the state of Connecticut actively supervises the posting, matching, and coordination of bottle and case prices among manufacturers and wholesalers of alcoholic beverages. Instead, state agents, including the defendants, allow manufacturers and wholesalers to utilize the challenged provisions to fix and maintain anticompetitive retail prices.

22. The challenged provisions and the practices they foster frustrate Total Wine & More's efforts to use its business efficiencies and economies of scale to deliver low prices to Connecticut consumers. Total Wine & More desires to reduce its prices to levels driven by market forces rather than the artificially high price levels created and maintained by anticompetitive regulation and wholesalers' price fixing, but it is unable to do so because of the artificially high "minimum bottle prices" mandated through the challenged provisions, and because of the threat that defendants will seek civil and criminal penalties were Total Wine & More to sell below its arbitrary "minimum bottle cost." Total Wine & More's inability to offer market-based, consumer-driven prices causes it to lose business to less efficient retailers, and harms consumers by causing significantly higher retail prices for alcoholic beverages to be offered throughout the state.

5623070.2

23. The principal purpose and effect of the challenged provisions is to fix and maintain prices to protect inefficient and politically well-connected participants in Connecticut's alcoholic beverage industry, and not to promote any legitimate state interest defined by the core purposes of the 21st Amendment to the U.S. Constitution.

24. The challenged provisions have an adverse effect on interstate commerce in the alcoholic beverages industry.

## COUNT ONE
### (Sherman Act – Horizontal Price Fixing)

25. Plaintiff incorporates by reference paragraphs 1 through 24 above.

26. The challenged provisions facilitate and impel horizontal price-fixing among Connecticut wholesalers and are hybrid, per se restraints of trade.

27. Neither defendants nor any other state officials or agencies in Connecticut actively supervise the challenged provisions.

28. The challenged provisions are preempted by the federal Sherman Act, 15 U.S.C. § 1.

## COUNT TWO
### (Sherman Act – Vertical Price Fixing)

29. Plaintiff incorporates by reference paragraphs 1 through 28 above.

30. The challenged provisions facilitate and impel vertical price-fixing and resale price maintenance among Connecticut manufacturers, wholesalers, and retailers and are hybrid, per se restraints of trade.

31. Alternatively, the challenged provisions facilitate and impel vertical price-fixing and resale price maintenance among Connecticut manufacturers, wholesalers, and retailers and are hybrid, unreasonable restraints of trade.

5623070.2

32. Neither defendants nor any other state officials or agencies in Connecticut actively supervise the challenged provisions.

33. The challenged provisions are preempted by the federal Sherman Act, 15 U.S.C. § 1.

## RELIEF

34. Plaintiff requests that the Court enter judgment in plaintiff's favor and against defendants:

   a. Declaring that the challenged provisions of the Connecticut General Statutes and the Connecticut Administrative Code are void and of no force and effect;

   b. Enjoining continued enforcement of the challenged provisions;

   c. Awarding plaintiff its costs and attorney's fees pursuant to 15 U.S.C. § 15(a) and/or other applicable law; and

   d. Granting such other relief as the Court deems just.

| Of counsel: | PULLMAN & COMLEY LLC |
|---|---|
| William J. Murphy<br>John J. Connolly<br>ZUCKERMAN SPAEDER LLP<br>100 E. Pratt St., Suite 2440<br>Baltimore, Maryland 21202<br>410 332 0444 (phone)<br>410 659 0436 (fax)<br>wmurphy@zuckerman.com<br>jconnolly@zuckerman.com<br><br>*Attorneys for Plaintiff* | By: /s/ James T. Shearin<br>James T. Shearin<br>850 Main Street<br>P.O. Box 7006<br>Bridgeport, CT 06601-7006<br>203 330-2240 (phone)<br>203 576-8888 (fax)<br>jtshearin@pullcom.com<br><br>*Attorneys for Plaintiff* |