## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT FINE WINE & | : | |
| SPIRITS, LLC, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 16-cv-1434 (JCH) |
|     v. | : | |
| | : | |
| JONATHAN A. HARRIS et al., | : | NOVEMBER 8, 2016 |
|     Defendants. | : | |

### RULING RE: MOTIONS TO INTERVENE (DOC. NOS. 27, 30, 39, 47)

## I.   INTRODUCTION

On August 23, 2016, plaintiff Connecticut Fine Wine & Spirits, LLC ("Total Wine")

filed a Complaint against defendants Jonathan A. Harris, Commissioner of the

Connecticut Department of Consumer Protection, and John Suchy, Director of the

Connecticut Division of Liquor Control, in their official capacities.  Complaint (Doc.

No. 1) at 1.  Total Wine alleges that various Connecticut statutes and regulations

governing the sale and distribution of wine and spirits are preempted by federal antitrust

law.  See Pl.'s Combined Opp'n to Mots. to Intervene of Wine & Spirits Wholesalers,

Conn. Beer Wholesalers Ass'n, Inc., Conn. Restaurant Ass'n, and Conn. Package

Stores Ass'n ("Opposition") (Doc. No. 52) at 1.

Several trade associations—the Wine & Spirit Wholesalers of Connecticut

("WSWC") (Doc. No. 27), Connecticut Beer Wholesalers Association ("CBWA") (Doc.

No. 30), Connecticut Restaurant Association ("CRA") (Doc. No. 39), and Connecticut

Package Stores Association ("CPSA") (Doc. No. 47) (collectively, "the movants")—have

filed Motions to Intervene in the above-captioned case, arguing that their interests are

sufficient to justify intervention as of right and, in the alternative, permissive intervention.

Total Wine has opposed each of the Motions to Intervene.  <u>See</u> Opposition at 20.  The putative intervenors timely replied.  <u>See generally</u> Combined Reply in Supp. of Mots. to Intervene as Defs. by Wine & Spirits Wholesalers of Conn., Conn. Restaurant Ass'n, Conn. Beer Wholesalers Ass'n, and Conn. Package Stores Ass'n ("Reply") (Doc. No. 60).

For the reasons set forth below, the Motions to Intervene filed by WSWC, CBWA, CRA, and CPSA (Doc. Nos. 27, 30, 39, and 47) are **GRANTED**.

## II. FACTS[1]

### A. Wine & Spirits Wholesalers of Connecticut

WSWC is a statewide trade association, representing the interests of wine and spirits wholesalers across the state of Connecticut.  Mem. of Law of Wine & Spirits Wholesalers of Conn. in Supp. of its Mot. to Intervene as Def. ("WSWC Mem.") (Doc. No. 27-1) at 2.  It represents wholesalers who distribute more than 85% of the wine and spirits in the state of Connecticut.  <u>Id.</u>  Members of WSWC conduct business with various state-licensed retailers—package stores and restaurants alike—and treat the state pricing regime as a "cornerstone" of these relationships.  <u>See id.</u> at 3. Wholesalers' profitability will be adversely effected if the pricing statutes and regulations are struck down.  <u>Id.</u> at 3; <u>see also</u> Decl. of Lawrence F. Cafero, Jr. in Support of Mot. to Intervene of Wine & Spirits Wholesalers of Conn. ("Cafero Decl.") (Doc. No. 27-2) ¶ 6.

---

[1] "In considering a motion to intervene, the court must accept as true non-conclusory allegations of the motion."  <u>United Parcel Serv. of Am., Inc. v. Net, Inc.</u>, 225 F.R.D. 416, 421 (E.D.N.Y. 2005) (citing, <u>inter alia</u>, <u>Oneida Indian Nation of Wis. v. New York</u>, 732 F.2d 261, 265 (2d Cir. 1984)).  The facts above are thus drawn from the various Motions to Intervene and are limited to those necessary to rule on those Motions.

B.    Connecticut Beer Wholesalers Association

CBWA is a Connecticut-based trade association representing the interests of licensed wholesalers of malt beverages.  Mem. of Law in Supp. of Mot. to Intervene ("CBWA Mem.") (Doc. No. 30-1) at 5.  Eight beer wholesalers are currently members of CBWA.  Id.  Collectively, these eight wholesalers account for approximately 75% of the malt beverage distribution in Connecticut.  Id.  CBWA members are bound by Connecticut's Liquor Control Act, including the "challenged provisions" referenced in Total Wine's Complaint.  See id. at 6.  The requirements set forth in these provisions are "fundamental" to CBWA members' interactions with suppliers and with retailers. See id. at 9.

C.    Connecticut Restaurant Association

CRA is a state trade association that represents restaurants "of every type and size in the state of Connecticut."  See Mem. of Law of Wine & Spirits Wholesalers of Conn. in Supp. of its Mot. to Intervene ("CRA Mem.") (Doc. No. 39-1) at 2.[2]  The state statutes being challenged in this case are the "cornerstone" of CRA members' relationships with wine and spirits wholesalers.  Id. at 3.  Those members' profitability

---

[2] The court notes that CRA's Memorandum of Law is incorrectly titled as though it were filed by WSWC.  Moreover, large sections of the Memorandum are apparently lifted—with minor revisions—from WSWC's Memorandum of Law.  Compare WSWC Mem. at 2 ("WSWC seeks to intervene to defend the existing laws, which protect their members' substantial economic interest.  WSWC's participation as an intervenor-defendant will aid – not impede – resolution and will not in any way prejudice the existing parties."), with CRA Mem. at 2 ("CRA seeks to intervene to defend the existing laws, which protect many of their members' substantial economic interests.  CRA's participation as an intervenor-defendant will aid – not impede – resolution and will not in any way prejudice the existing parties.").  In the future, the court suggests CRA coordinate its briefing with WSWC or others, to the extent its arguments are the same as those of the other groups.  Cf. Reply at 12 n.10 (describing process of joint briefing as "blueprint for how the parties would proceed in good faith to further the efficient management of the docket should the Court grant intervention").

will be adversely effected if the challenged statutes are struck down.  Id.; see also Decl.
of Sarah Maloney ("Maloney Decl.") (Doc. No. 39-2) ¶ 6.

   D. <u>Connecticut Package Stores Association</u>

  The CPSA is a trade association representing the interests of the owners of
package stores throughout the state of Connecticut.  <u>See</u> Mem. of Law in Supp. of Mot.
to Intervene of Conn. Package Stores Ass'n ("CPSA Mem.") (Doc. No. 47-1) at 2.  Most
of these package store owners have only one store; collectively they are, nonetheless,
the "predominant" sellers of alcohol in Connecticut.  <u>Id.</u>  If Total Wine is successful,
CPSA members will suffer significant financial harm.  <u>Id.</u>

## III. LEGAL STANDARD

  Federal Rule of Civil Procedure 24 ("Rule 24") governs motions to intervene.
Rule 24(a) sets out the requirements for intervention as of right, while Rule 24(b)
discusses permissive intervention; Rule 24(c) imposes procedural requirements on
motions to intervene.  "The applicant bears the burden of demonstrating that it meets
the requirements for intervention."  <u>Floyd v. City of New York</u>, 302 F.R.D. 69, 83
(S.D.N.Y. 2014) (citing <u>U.S. Postal Serv. v. Brennan</u>, 570 F.2d 788, 191 (2d Cir. 1978)),
<u>aff'd</u>, 770 F.3d 1051 (2d Cir. 2014) (per curiam).  As noted above, the court accepts as
true all non-conclusory allegations of the Motions to Intervene, in determining whether
the movants have carried their burden.  <u>United Parcel Serv. of Am., Inc. v. Net, Inc.</u>, 225
F.R.D. 416, 421 (E.D.N.Y. 2005) (citing, <u>inter alia</u>, <u>Oneida Indian Nation of Wis. v. New
York</u>, 732 F.2d 261, 265 (2d Cir. 1984)).

**IV.     DISCUSSION**

    A.    <u>Rule 24(c): Procedural Requirements</u>

Total Wine's first objection to the movants' intervention is that each of the four putative intervenors has failed to comply with the requirements set forth in Rule 24(c). <u>See</u> Opposition at 4.  The movants respond that they were not required to submit a "pleading," notwithstanding the language in Rule 24(c), given the specificity of their Motions to Intervene.  <u>See</u> Reply at 13–14.  Moreover, they argue that the sole case cited by Total Wine for the proposition that the Second Circuit has a stricter standard on this issue than do other circuits is fifty years old and out of step with more recent case law in the Circuit.  <u>See</u> <u>id.</u> at 14.

Rule 24(c) reads, in its entirety: "A motion to intervene must be served on the parties as provided in Rule 5.  The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  Total Wine properly concedes that "probably a majority" of courts construe Rule 24(c) liberally.  <u>See</u> Opposition at 4.  Indeed, at least the District of Columbia, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits have been identified as "tak[ing] a lenient approach to the requirements of Rule 24(c)," <u>see</u> <u>Providence Baptist Church v. Hillandale Comm., Ltd.</u>, 425 F.3d 309, 314 (6th Cir. 2005) (collecting cases); <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 474–75 (9th Cir. 1992).  By contrast, the Second Circuit has, along with the First and Seventh Circuits, been characterized as "tak[ing] a stricter approach to Rule 24(c)."  <u>Providence Baptist Church</u>, 425 F.3d at 314.

This characterization of the Second Circuit's law on point is grounded in the fifty-year-old decision in Abramson v. Pennwood Investment Corp., 392 F.2d 759 (2d Cir. 1968). See id.; Opposition at 4–5. It is clear on closer inspection, however, that Abramson should not be read to require that all putative intervenors file "pleadings" with their motions to intervene. Total Wine carefully—and with appreciated candor—notes that the Abramson court merely "affirmed a district court's decision to deny intervention because the movant's failure to file a pleading along with his motion papers 'was fatal to his application.'" Opposition at 4. Notably, it made no broad pronouncements requiring that pleadings be attached to motions to intervene in all cases. See Abramson, 392 F.2d at 761–62.

The specific facts of the underlying litigation in Abramson further support a narrow reading. In that shareholder derivative litigation, the district judge concluded that the putative intervenors' invocation of the original complaint filed in the case—rather than attaching a complaint of their own that met the procedural requirements for complaints in derivative shareholder suits—was insufficient to meet the requirements of Rule 24(c). See id. at 761. The Circuit agreed, given that the putative intervenors' reference to the original complaint failed to comply with the unique requirements applicable to shareholder derivative actions, which include that complaints must be sworn, "specifically aver that the plaintiff was a shareholder at the time of the transactions complained of and that the action is not a collusive one to confer jurisdiction on the federal court[, and] set forth with particularity the plaintiff's efforts to secure action by the directors and shareholders or the reasons for not making such effort." Id. Failure to fulfill these requirements would have put the defendant at a

significant disadvantage in formulating a response to the <u>Abramson</u> movants.  Thus, the Circuit quite logically affirmed the district judge's dismissal pursuant to Rule 24(c), without explicitly mandating pleadings be filed with all motions to intervene.

The court is unpersuaded by Total Wine's contentions that, here, "the rest of the intervention analysis" is "infect[ed]" by the movants' failure to attach pleadings to their Motions.  Other courts in this Circuit have repeatedly made clear that "Rule 24(c) permits a degree of flexibility with technical requirements," so long as "the position of the movant is apparent from other filings and [ ] the opposing party will not be prejudiced."  <u>See, e.g.</u>, <u>Tachiona ex rel. Tachiona v. Mugabe</u>, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002).  Here, the movants have made clear the interests they seek to assert, as well as their positions with respect to the challenged provisions' validity.  Given the prompt filing of the Motions to Intervene after the initiation of this suit, the court very much doubts that Total Wine will be at all prejudiced by any liberal construction the court affords Rule 24(c).

Therefore, the court concludes that the movants' failure to file a "pleading" with their Motions is not fatal to their efforts to intervene.  The movants' Motions put Total Wine sufficiently on notice as to their interests and positions in the case, such that this court will liberally construe Rule 24(c), in accordance with the circuit courts that have more recently addressed this issue, <u>see, e.g.</u>, <u>Providence Baptist Church</u>, 425 F.3d at 314, and with other courts in this Circuit, <u>Tachiona</u>, 186 F. Supp. 2d at 393; <u>Windsor v. United States</u>, 797 F. Supp. 2d 320, 325 (S.D.N.Y. 2011); <u>In re Tribune Co. Fraudulent Conveyance Litig.</u>, 291 F.R.D. 38, 42 n.3 (S.D.N.Y. 2013).

B.      Rule 24(a): Intervention as of Right

The movants assert that they have a right to intervene under Federal Rule of

Civil Procedure 24(a)(2).  See WSWC Mem. at 4; CBWA Mem. at 6; CRA Mem. at 4;

CPSA Mem. at 3.  Rule 24(a)(2) requires the court to permit intervention by anyone who

"claims an interest relating to the property or transaction that is the subject of the action,

and is so situated that disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest, unless existing parties adequately

represent that interest."  Fed. R. Civ. P. 24(a)(2).  Total Wine and the movants agree,

see Opposition at 5; Reply at 2, that the court must grant the motion to intervene if "(1)

the motion is timely; (2) the applicant asserts an interest relating to the property or

transaction that is the subject of the action; (3) the applicant is so situated that without

intervention disposition of the action may, as a practical matter, impair or impede the

applicant's ability to protect its interest; and (4) the applicant's interest is not adequately

represented by the other parties."  Laroe Estates, Inc. v. Town of Chester, 828 F.3d 60,

66 (2d Cir. 2016) (quoting MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d

377, 389 (2d Cir. 2006)).  "Failure to meet any one of these requirements suffices for a

total denial of the motion."  In re Holocaust Victim Assets Litig., 225 F.3d 191, 197–198

(2d Cir. 2000) (citing Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)).  The court

addresses each of these four factors in turn.

1.      Timeliness

Total Wine concedes, given the court's rejection of any defects in the Motions

under Rule 24(c), that the Motions are timely.  See Opposition at 6.  Given the court's

"broad discretion in assessing the timeliness of a motion to intervene," In re Holocaust

Victim Assets Litig., 225 F.3d at 198, the promptness in the movants' filing their Motions

after this suit was initiated, and the lack of any apparent prejudice to Total Wine in

allowing intervention, the court determines that the timeliness requirement is satisfied.

>    2.    Interest in the Litigation

Total Wine vigorously contests the sufficiency of the movants' interests in this

litigation.  See Opposition at 6–9.  Total Wine's argument is essentially threefold:

(a) that the movants' asserted interest is not legally cognizable as a basis for

intervention; (b) that the movants' have not sufficiently alleged the damage to their

constituents' businesses if the laws are struck down; and (c) that the CBWA has no

cognizable interest here because Total Wine "has limited its claims to challenging the

pricing provisions relating to the sale of wine and spirits," Opposition at 8.  After

reviewing and rejecting each of these challenges, the court concludes that the movants

all have a sufficient interest in this case to justify intervention as of right.

>    a.    Cognizable Interests

The Second Circuit has made clear that:

> "for an interest to be cognizable under Rule 24, it must be direct, substantial, and
> legally protectable.  In other words, an interest that is remote from the subject
> matter of the proceeding, or that is contingent upon the occurrence of a
> sequence of events before it becomes colorable, will not satisfy the rule."

Floyd v. City of New York, 770 F.3d 1051, 1060 (2d Cir. 2014).  Total Wine appears to

suggest that the Second Circuit's holding in Floyd—where it upheld a denial of

intervention after the district court found the police union's interest in its members'

reputations "too indirect and insubstantial" and its interest in protecting collective

bargaining rights "too remote," see Floyd, 770 F.3d at 1060–61—compels a similar

denial of intervention here.  See Opposition at 6–7.

The court disagrees.  First, other than the brief nod toward <u>Floyd</u>, Total Wine does not cite any case law that suggests the movants' interests are not cognizable here. This may well be because the great weight of the case law, some of which is cited in the movants' Reply, <u>see generally</u> Reply at 2–6, tends to support a determination that the movants' interests are sufficient.   As a general matter, parties who benefit economically from a statute or regulation have a cognizable interest in that statute or regulation, particularly where it is designed to encourage the continued existence of independent wholesalers or retailers.  <u>See</u> <u>N.Y. Pub. Interest Research Grp. v. Regents of Univ. of State of N.Y.</u>, 516 F.2d 350, 351–52 (2d Cir. 1975) (per curiam).  Further supporting this proposition is the fact that several Supreme Court and Second Circuit cases appear to take for granted—or at least note, without any negative comment—the intervention of liquor wholesalers and retailers in support of challenged state statutes.  <u>See, e.g.</u>, <u>Granholm v. Heald</u>, 544 U.S. 460, 469, 471 (2005) (Michigan wholesalers association and New York wholesalers and retailers); <u>44 Liquormart, Inc. v. Rhode Island</u>, 517 U.S. 484, 493 (1996) (Rhode Island retailers association); <u>Arnold's Wines, Inc. v. Boyle</u>, 571 F.3d 185, 187 (2d Cir. 2009) (New York wholesalers and New York retailers association); <u>Battipaglia v. N.Y. State Liquor Auth.</u>, 745 F.2d 166, 168 (2d Cir. 1984) (New York wholesaler).

In the absence of case law suggesting a contrary conclusion, the movants' economic interests, if sufficiently alleged, <u>see</u> <u>infra</u> Part IV.B.2.b, are cognizable pursuant to Rule 24(a)(2).

b.      Sufficiency of Allegations

Total Wine further contends that the movants' allegations of economic harm are "conclusory," see Opposition at 7–9, faulting the movants for a failure "to explain exactly how their profits might be harmed, or the magnitude of the harm, or how the elimination of the challenged provisions would affect their relationships . . . or any other details," id. at 7–8.

Other than the above-referenced, brief discussion of Floyd, see Opposition at 6–7, there is no further citation to any law that might suggest the movants' interests are not substantial enough.  Indeed, accepting all the allegations in the Motions to Intervene as true, see United Parcel Serv. of Am., Inc. v. Net, Inc., 225 F.R.D. 416, 421 (E.D.N.Y. 2005) (citing, inter alia, Oneida Indian Nation of Wis. v. New York, 732 F.2d 261, 265 (2d Cir. 1984)), the movants have carried their burden of alleging sufficient interests in the challenged provisions.  The movant's allege in their Motions and have submitted affidavits that swear that the injunctive relief sought by plaintiff "would substantially impact and alter [their members'] business[es]," CBWA Mem. at 6; Aff. of Jude Malone in Supp. of Mot. to Intervene ("Malone Aff.") (Doc. No. 30-2) ¶ 9, would strike down statutes "critical to [their] business and economic interests," WSWC Mem. at 3; Cafero Decl. ¶ 6; CRA Mem. at 3; Maloney Decl. ¶ 6, and would "cause [their] members considerable financial harm," CPSA Mem. at 2; see Decl. of Stephen Downes ("Downes Decl.") (Doc. No. 47-2) ¶ 5.

Accepting as true these allegations of grave harm if the statutes and regulations at issue in this case are struck down, the movants' interests are "substantial" enough to satisfy this requirement for intervention as a matter of right.

c.      CBWA's Interest

Total Wine also contends that the CBWA does not have the requisite interest in this litigation to permit intervention as of right, because "the [C]omplaint does not challenge the Connecticut laws governing the sale and distribution of beer" and because Total Wine "has limited its claims to challenging the pricing provisions relating to the sale of wine and spirits." Opposition at 8.

These assertions are entirely belied by the allegations and requests for relief in Total Wine's Complaint. To be sure, Total Wine frequently refers only to the challenged laws' effects on parties buying or selling wine and spirits. See, e.g., Complaint ¶¶ 12, 13, 18; Complaint tbls. 1, 2. However, it admits that "some of the referenced statutes address the sale and distribution of beer as well as wine and spirits," Opposition at 2, while requesting relief in the form of both a "[d]eclaration that the challenged provisions of the Connecticut General Statutes and the Connecticut Administrative Code are void and of no force and effect" and an injunction against "continued enforcement of the challenged provisions," Complaint ¶¶ 34a, 34b. Many of the statutory sections challenged by Total Wine apply to all alcoholic beverages, see, e.g., Compl. ¶ 14 (challenging, inter alia, Conn. Gen. Stat. §§ 30-68k, 30-63(b)); Conn. Gen. Stat. §§ 30-68k, 30-63(b) (setting out restrictions pertaining to "alcoholic liquor[ ]"); Conn. Gen. Stat. § 30-1(3) (defining "alcoholic liquor" or "alcoholic beverage" to include beer), and, even in the case of provisions that distinguish between beer and other alcoholic beverages, Total Wine does not tailor its Complaint to challenge those specific parts of these statutes, see Comp. ¶ 12 (challenging Conn. Gen. Stat. § 30-63 in its entirety, without noting distinction of beer in Conn. Gen. Stat. § 30-63(c)). Notably, there is no

suggestion in the Complaint that Total Wine would have the court limit its ruling as to the legality of the state provisions to their effects on wine and spirits pricing.

The court need not address the movants' contention that the court could not parse a determination that the state provisions are preempted in the way Total Wine suggests, see Reply at 7–8, as the Complaint plainly does not seek such a targeted ruling. CBWA's interests are sufficiently implicated in this case, the contours of which are determined by Total Wine's own Complaint, to satisfy this requirement for intervention.

### 3. Impairment of Interests if Intervention is Not Permitted

Total Wine challenges the movants' claims that their interests will be impaired if intervention is not permitted "[f]or the same reasons set forth" in its arguments as to their interests in the litigation, discussed in Part IV.B.2 of this Ruling. See Opposition at 9.

In light of the court's determination that those arguments are unavailing, so too are Total Wine's arguments, incorporated by reference, that the movants have not demonstrated that their interests would be sufficiently impaired if intervention were not permitted.

### 4. Adequate Representation by Other Parties

Generally, the burden of demonstrating inadequacy of the existing parties' representation is "minimal." Laroe Estates, Inc. v. Town of Chester, 828 F.3d 60, 70 (2d Cir. 2016) (quoting Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001)). However, the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same

ultimate objective." <u>Allco Fin. Ltd. v. Etsy</u>, 300 F.R.D. 83, 87 (D. Conn. 2014) (quoting <u>Butler, Fitzgerald & Potter</u>, 250 F.3d at 179)).  "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." <u>Butler, Fitzgerald & Potter</u>, 250 F.3d at 179–180 (citing <u>U.S. Postal Serv. v. Brennan</u>, 579 F.2d 188, 191)).

Certainly, it appears at this early stage of the litigation that the movants and the defendants have the same objective, namely the maintenance of the current statutory and regulatory regime.  It is less clear, however, whether the two groups have an "identity of interest" such that a "<u>presumption</u> of adequate representation" is triggered. <u>See</u> <u>id.</u>  Total Wine, which believes that such a presumption has been triggered, relies in large part on the Second Circuit's holding in <u>Natural Resources Defense Council, Inc. v. New York State Department of Environmental Conservation</u> ("<u>NRDC</u>"), 834 F.2d 60 (2d Cir. 1987), while the movants, who do not believe the presumption has been triggered, rely on <u>New York Public Interest Research Group, Inc. v. Regents of University of the State of New York</u> ("<u>NYPIRG</u>"), 516 F.2d 350 (2d Cir. 1975).

In <u>NYPIRG</u>, the Circuit reversed the district court's denial of intervention as of right. <u>See</u> 516 F.2d at 352.  The movant pharmacists and pharmaceutical society moved to intervene as of right in a case challenging statewide advertising regulations, claiming in part that the Regents of the state university system would not provide adequate representation of their interests. <u>See</u> <u>id.</u> at 351.  The Circuit Court acknowledged that the question of adequacy of representation was a "close[ ]" one, but was "satisfied that there [was] a likelihood that the pharmacists [would] make a more vigorous presentation of the economic side of the argument than would the Regents."

14

Id. at 352.  The Regents admitted, and the court agreed, that their interests might substantially diverge from those of the pharmacists seeking to defend the regulation. See id.  Therefore, the court found that the pharmacist-movants' rights would not be adequately represented and ultimately that they met the requirements for intervention as a matter of right.

By contrast, the NRDC court took aim at the movant's attempted reliance on NYPIRG as grounds for a finding of inadequate representation.  There, the American Petroleum Institute ("API") moved to intervene on the side of the state and federal defendants, against a suit brought by environmental and health groups to compel enforcement of certain aspects of the state's already-approved Clean Air Act State Implementation Plan ("SIP").  See NRDC at 61.  Crucially, the Circuit Court underscored the deference afforded to district judges' rulings on motions to intervene, explaining that "[s]o long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." Id. at 62 (emphasis added).   On the merits, the court noted that the decision to implement the specific pollution control measures—those that API's members wanted to avoid—had already been made: the only issue in the case was the state's lack of enforcement.  See id. at 61.  That being the case, API had made no showing that its economic interests that were not necessarily shared by the state and federal defendants gave rise to an incentive to raise different legal arguments.  Id. at 62.  Conversely, in NYPIRG, the court had concluded that the pharmacists planned to assert the continued

existence of independent drug stores as a justification for the challenged regulation, whereas the state sought to justify the ban on public health grounds.  See id.

At this early stage of the litigation, both the justifications the defendants will offer for the challenged provisions and the incentives they have for doing so remain somewhat unclear.  That being said, this case is more similar to NYPIRG than it is to NRDC.  Here, the movants have each submitted sworn affidavits that their members' economic health is at stake in this litigation.  See Malone Aff. ¶ 9; Cafero Decl. ¶ 6; Maloney Decl. ¶ 6; Downes Decl. ¶ 5.  It stands to reason that they, like the putative intervenors in NYPIRG "will make a more vigorous presentation of the economic side of the argument" in favor of these laws than will the defendants, who are the regulators.  See NYPIRG at 352.  Moreover, each of the movants in this case has different interests, such that, even if the defendants could adequately represent the interests of one movant, or if they had "identity of interests," Butler, Fitzgerald & Potter, 250 F.3d at 179–180 (citing U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191)), it seems almost certain that they would not be able to do so for all the movants, who have conflicting interests, at least to some extent.[3]

By contrast, in NRDC there was effectively no "economic side of the argument" to be made: the decision to implement specific pollution controls as part of New York's SIP had already been made.  See NRDC. 834 F.2d at 61.  All relevant arguments thus related to the permissibility of defendants' failing to enforce the SIP, rather than the

---

[3] For example, although the WSWC, CRA, and CPSA have all moved to intervene in defense of the statutory and regulatory regime, the particular provisions most important to WSWC members may well differ from those of their customers, members of the CRA and CPSA.  See WSWC Mem. at 3 (noting that WSWC members "sell and deliver many alcohol beverage products" to "both package stores and restaurants").

advisability or permissibility of incorporating specific, expensive pollution control measures.  See id.  In that case, the defendants were entirely able to and had proper incentives to raise all relevant, nonfrivolous legal arguments; API's additional arguments would have been largely duplicative, or would have been considered and discarded by the defendants.  See id. at 62 ("The fact that API wishes to advance contentions the existing defendants apparently believe are unavailing does not require API's intervention where no nexus exists between the interest asserted and the contentions sought to be put forth.").  The movants' economic interests here are far more directly bound up in the challenged provisions and may well incentivize some or all of them to raise different arguments than the defendants would plan to assert.

Therefore, the movants' interests will not be adequately represented by the defendants and, given that each of the requirements for intervention as of right has been found present in this case, the movants have established their right to intervene.

C.    Rule 24(b): Permissive Intervention

Even if the court concluded that the movants had not made a showing that they may intervene as of right, it would permit the movants to intervene pursuant to Federal Rule of Civil Procedure 24(b).  That provision allows the court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Total Wine's arguments against permissive intervention are largely duplicative of the contentions rejected above, likely because "[s]ubstantially the same factors are

17

considered in determining whether to grant an application for permissive intervention pursuant to" Federal Rule of Civil Procedure 24(b)(1) as for determining whether to grant intervention as a matter of right.  See Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 103 (D. Conn. 2009) (citing In re Bank of N.Y., 320 F.3d 291, 300 n.5), vacated on other grounds sub nom. Nationwide Life Ins. Co. v. Haddock, 460 F. App'x 26 (2d Cir. 2012) (summary order).  Thus, to the extent Total Wine's arguments mirror those it made against intervention as of right, see Opposition at 17–18, the court rejects them.

The principal argument Total Wine additionally raises in this section of its Opposition is that "[i]ntervention will unduly delay and prejudice the adjudication of the rights of the additional parties."  See Opposition at 16.  Total Wine protests that the presence of four intervenors in this case will dramatically expand the scope of discovery and enhance the complexity of the dispositive motions in the case.  See id.  This will "be unduly prejudicial to the original parties."  See id. at 17.

The court is skeptical that the inclusion of the movants as intervenors in this case will make the case dramatically more onerous.  In fact, as the movants point out, see Reply at 11–12, the parties have already made clear that they anticipate extensive discovery of "industry participants'" documents, see Rule 26(f) Report of Parties' Planning Meeting (Doc. No. 51) at 6.  It is thus unlikely that, upon intervention by the movants, discovery will be of significantly different scope than already envisioned by the parties.

Furthermore, the court appreciates and takes seriously the movants' offer to "discuss in good faith whether there are reasonable ways to make participation by

intervenors more efficient for all involved." <u>See</u> Reply at 12.  The court expects the movants to abide by this promise beyond the preparation of their Reply.  That being the case, any concerns the court might otherwise have as to the expansion of discovery and any prejudice resulting therefrom are substantially alleviated.

Therefore, the court would exercise its discretion under Federal Rule of Civil Procedure 24(b), even if the movants had not established their right to intervene.

## V.    CONCLUSION

For the reasons discussed above, the movants' Motions (Doc. Nos. 27, 30, 39, 47) are **GRANTED**.  However, the court expects the movants to act in accordance with their representations that they will submit joint briefing and engage in mandatory "meet-and-confers" as appropriate.  <u>See</u> Reply at 12.

Total Wine, the defendants, and the movants are further ordered to confer and propose new scheduling and discovery deadlines to the court within 14 days from the entry of this Ruling.  Consistent with the movants' representations and with earlier Orders in this case, the movants are directed to file their Motions to Dismiss or responsive pleadings within 14 days from the entry of this Ruling, <u>see</u> Reply at 13 (proposing such deadlines), and Total Wine is ordered to file its Opposition, if any, within 29 days from the entry of this ruling, <u>see</u> Order (Doc. No. 55) (granting Total Wine "15 days after the proposed Intervenors have filed any Motions to Dismiss" to file any Opposition).

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of November, 2016.


  /s/ Janet C. Hall
Janet C. Hall
United States District Judge